# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYRONE LAVERNE BILLS, SR., deceased, by and through his mother, ETTA MAE DANIELS, as Personal Representative of his estate,<br><br>Plaintiff,<br>vs.<br>THE CITY OF OKLAHOMA CITY, OKLAHOMA, a municipal corporation; DUSTIN MOTLEY, individually and in his official capacity as a police officer for the City of Oklahoma City, Oklahoma; et al.,<br><br>Defendants. | No. CIV-09-00974-D |

## **ORDER**

Before the Court is the Motion to Dismiss filed by Defendant William Citty ("Citty") [Doc. No. 100], seeking dismissal of all claims asserted against him in his official and individual capacities. Plaintiff timely responded, and Citty has filed a reply brief.

I. Background:

In the Amended Complaint, Plaintiff asserts several claims against numerous defendants. Pursuant to 42 U. S. C. § 1983, she contends that the defendants violated the constitutional rights of Tyrone Laverne Bills, Sr. ("Bills"). These contentions are based on a December 25, 2007 incident in which Bills was fatally shot by Oklahoma City Police Officer Dustin Motley ("Motley")[1] while Motley and other officers were attempting to apprehend Bills in connection with a reported domestic battery. Plaintiff alleges Defendants violated Bills' Fourth and Fourteenth Amendment rights by unlawfully seizing him and using excessive force; she also asserts Eighth and Fourteenth

---

[1] Plaintiff also appears to contend that other police officers also fired shots at Bills; whether that contention is properly alleged is not the subject of Citty's motion and need not be addressed in this Order.

Amendment claims premised on Defendants' alleged deliberate indifference to Bills' serious medical needs following the shooting. Plaintiff also alleges Defendants' actions were motivated by Bills' race and violated the Fourteenth Amendment's equal protection clause.

Plaintiff has named as defendants not only Motley but also other police officers and emergency response personnel and Citty, who was the Oklahoma City Chief of Police at the time of the incident. In addition, she names the City of Oklahoma City ("Oklahoma City") as a defendant, seeking to hold it liable as the employer of the other defendants.

Citty seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Amended Complaint fails to state a claim for relief against him in either his official or individual capacity. He contends the allegations in the Amended Complaint are insufficient as a matter of law to render him potentially liable on any constitutional claim asserted by Plaintiff. Alternatively, he contends he is entitled to qualified immunity on the individual capacity claims.

In the Amended Complaint, Plaintiff's allegations regarding Citty are as follows:

> The Oklahoma City Chief of Police, William Citty, individually and in his official capacity as a Defendant, formerly sued as JOHN DOE 1, individually and in his official capacity as Chief of Police for the Oklahoma City. On information and belief, Defendant Chief of Police participates with the City Council as a policy maker, makes rules and regulations he deems appropriate, supervises all police officers, has ultimate authority for the training of officers, and designates training officers and police school instructors.

Amended Complaint, ¶ 4. The remainder of the Amended Complaint contains no allegation directed at any action or inaction of Citty in connection with the fatal shooting; in fact, there is no further reference to him by name or title. Citty contends that the allegations are insufficient as a matter of law to state a claim for relief against him in his official capacity as Chief of Police or in his individual capacity. In response, Plaintiff argues that, in testing the sufficiency of the Amended

2

Complaint, the Court should not consider material beyond the Amended Complaint, including exhibits she submitted with the Amended Complaint, without first converting the motion to a summary judgment motion. Plaintiff also argues that her allegations are sufficient to state a claim for relief against Citty in both his official and individual capacities.[2]

II. Rule 12(b)(6) Standards:

a. Consideration of material outside the amended complaint:

Although the Court's determination of a Rule 12(b)(6) motion is generally limited to the sufficiency of the pleadings, material outside the pleadings may be considered in some circumstances. Specifically, the Court may review material submitted as an exhibit to a pleading or incorporated or referenced in the complaint; documents relied upon by a plaintiff as an integral basis for his claims may also be considered. *Tal v. Hogan,* 453 F. 3d 1244, 1265 n. 24 (10th Cir. 2006). Where documents are central to a plaintiff's claims, they may be properly considered in a motion to dismiss, and conversion to a summary judgment motion is not required. *Jacobsen v. Deseret Book Co.*, 287 F. 3d 936, 941 (10th Cir.2002); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F. 3d 1381, 1384-85 (10th Cir.1997).

Consideration of material outside the pleadings is also permissible in testing the sufficiency of § 1983 allegations. "In analyzing the sufficiency of plaintiff's § 1983 claims, the court is not limited to the four corners of the complaint, but may also consider documents referred to in the complaint." *Pace v. Swerdlow*, 519 F. 3d 1067, 1072 (10th Cir. 2008).

In this case, although Plaintiff contends material outside the pleadings should not be

---

[2] Plaintiff also reasserts contentions that Citty and other defendants have failed to produce documents or answer interrogatories responsive to Plaintiff's discovery requests. Because these matters have previously been addressed by the Court, they will not be discussed in this Order. In any event, such contentions have no bearing on whether the Amended Complaint alleges a plausible claim for relief against Citty.

3

considered, Plaintiff's response brief incorporates over 20 exhibits, and she refers to those exhibits in her arguments.[3] Furthermore, the Amended Complaint is accompanied by exhibits. Although Plaintiff argues in her response brief that the Court must disregard those exhibits as not central to her claims, Plaintiff expressly cites those exhibits throughout the Amended Complaint. She apparently believed the exhibits were central to her allegations, otherwise, there would be no point in citing them in the Amended Complaint. Accordingly, contrary to her response argument, they may properly be considered in ruling on Defendant's motion. Defendant Citty does not attach to his motion any exhibit or ask the Court to consider material outside the pleadings.

The Court concludes that, despite Plaintiff's argument to the contrary, the exhibits submitted with the Amended Complaint may be considered in ruling on the Rule 12(b)(6) motion. The additional exhibits submitted with her response brief, however, are generally irrelevant to the question whether the Amended Complaint is sufficient to withstand Citty's motion. Instead, they appear to be submitted for consideration in the event the Court determines the motion should be converted to one seeking summary judgment. The Court will not convert the motion; instead, it will consider only the sufficiency of the allegations in the Amended Complaint, accompanied by exhibits which are incorporated therein. Therefore, the additional exhibits need not be considered.

b. General rules governing Rule 12(b)(6) motions:

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished

---

[3]The referenced exhibits were submitted with Plaintiff's response to another defendant's motion to dismiss; however, in response to Citty's motion, she expressly adopts and incorporates them. Response brief, p. 1.

opinion).

To state a plausible claim for relief, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x at 846 (quoting *Robbins*, 519 F. 3d at 1247.) "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins*, 519 F. 3d at 1247. The Tenth Circuit has explained the plausibility requirement as follows:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins*, 519 F. 3d at 1247 (quoting *Twombly*, 127 S. Ct. at 1974). The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

Although the Court must construe well-pleaded facts as true, not all factual allegations are "entitled to the assumption of truth." *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. 1937, 1951 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* The Court need not accept as true the assertions in a complaint which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Ashcroft,* 129 S. Ct. at 1951 (quoting

5

*Twombly*, 550 U.S. at 554-555).

c. Rule 12(b)(6) standards in § 1983 claims:

In *Robbins* and *VanZandt*, the Tenth Circuit applied the *Twombly* plausibility requirements to a § 1983 claim for relief. According to the Circuit, the nature of § 1983 claims increases the importance of requiring specific factual allegations because "state actors may only be held liable under § 1983 for their <u>own</u> acts." *Robbins*, 519 F. 3d at 1251. (emphasis added). As the Circuit explained:

> Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F. 3d at 1250 (emphasis in original). In *Robbins,* the plaintiffs sued several defendants in their individual capacities; they alleged the defendants collectively engaged in certain specific conduct which violated the plaintiffs' rights. According to the Circuit, the collective allegations were insufficient because the plaintiffs failed to identify the wrongful acts allegedly committed by each defendant:

> Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Robbins*, 519 F. 3d at 1250. Thus, the Circuit held that the allegations failed to satisfy both the *Twombly* plausibility requirements and the fair notice requirements of Fed. R. Civ. P. 8. *Id.* at 1250-51.

The Tenth Circuit has also stressed the importance of factual allegations in a § 1983 claim where qualified immunity is likely to be asserted as an affirmative defense. *Robbins*, 519 F. 3d at

1249; *VanZandt*, 276 F. App'x at 847. As the Circuit explained in *VanZandt*:

> Although we apply the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally, complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. [citing *Robbins*, 519 F. 3d at 1249]. The *Twombly* standard has greater "bite" in these contexts, "reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest stage of a litigation.'" [citing *Robbins* at 1249 and omitting citations].

*VanZandt,* 276 F. App'x at 847. Accordingly, as Citty argues in his motion, to state a plausible § 1983 claim for relief against him, Plaintiff must allege facts specifically identifying the conduct or inaction on which her claims against him are based.

III. Application:

a. Individual capacity claims:

To the extent Plaintiff seeks to hold Citty liable in his individual capacity for the alleged deprivation of Bills' constitutional rights, the Amended Complaint fails to satisfy the specificity required under Rule 8 and to state a plausible claim for relief. A review of the allegations establishes that, other than identifying Citty as the Police Chief, Plaintiff asserts no factual contentions to show the basis for her claims against him. The allegations wholly fail to satisfy the Tenth Circuit's requirement that she identify the actions or inactions which she contends form the basis for Citty's § 1983 liability in his individual capacity. *See Robbins*, 519 F. 3d at 1250. Not only does the Amended Complaint fail to include the requisite specificity, it fails to allege that Citty did anything, or failed to do anything, which purportedly caused the deprivation of Bills' constitutional rights.[4]

---

[4] Nor do the exhibits accompanying the Amended Complaint provide the requisite factual allegations regarding Citty's alleged role in the constitutional violations. Those exhibits consist of a medical examiner's report and autopsy concerning Bills, and police reports regarding the fatal shooting. Citty is not mentioned by name or title in any exhibit.

7

Alleging that Citty was Police Chief at the time of the incident is not, without more, sufficient to render him potentially liable for the actions of the numerous officers Plaintiff names as defendants. As Citty points out, Plaintiff submits authority applicable to an employer's potential § 1983 liability for the acts of its employees; she does not, and cannot, allege that Citty was the employer of the other defendants. Obviously, she is aware of that fact, as she has named Oklahoma City as a defendant, and seeks to hold it liable, as the employing municipality, for the defendant police officers' allegedly unconstitutional conduct. Oklahoma City has not filed a motion to dismiss the Amended Complaint, and the sufficiency of Plaintiff's allegations against it are not before the Court. Accordingly, Plaintiff's arguments regarding the liability of a municipality as an employer do not impact the Court's ruling regarding the sufficiency of her allegations against Citty.

As Citty also points out, alleging that, as Police Chief, he supervised the other defendants is not a sufficient basis for § 1983 liability; a supervisor is individually liable under § 1983 only for his own actions. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, __ U. S. __, 129 S.Ct. at 1948. Plaintiff has failed to satisfy that requirement.

Plaintiff's argument that Citty is liable pursuant to § 1983 because he somehow approved the actions of Motley and other officers also fails to support a claim against him. Allegations of post-conduct approval or purported ratification do not satisfy the causation requirements of § 1983 sufficient to hold a supervisor liable. *Cordova v. Aragon*, 569 F. 3d 1183, 1194 (10th Cir. 2009) (finding conduct occurring after an alleged violation could not cause the violation).

The Court concludes that the motion to dismiss the individual capacity claims against Citty

8

must be granted because Plaintiff has failed to allege a plausible claim for relief against him. However, the Court finds that Plaintiff should be allowed to attempt to cure the pleading deficiencies by amending the allegations. Where, as here, Plaintiff does not expressly seek leave to amend in the event of dismissal[5], the Court is not required to consider the propriety of an amendment, and has the authority to dismiss the claims with or without leave to amend. *Brever v. Rockwell International Corp.*, 40 F. 3d 1119, 1131 (10th Cir. 1994). However, "'if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Id.* (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1483, at 587 (2d ed. 1990) and *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993)). In this case, Plaintiff's response brief reflects that her primary contention is that Oklahoma City should be liable for the alleged conduct of the other defendants; it is unclear why she also seeks to hold Citty individually liable or the basis for such liability. However, the Court cannot conclude that it would be futile to authorize leave to amend. Accordingly, leave to amend will be granted as to the individual capacity claims asserted against Citty.

Defendant Citty also argues that he is entitled to dismissal of the individual capacity claims under the doctrine of qualified immunity. "Qualified immunity protects government officials performing discretionary functions from individual liability in federal claims unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nielander v. Board of County Comm'rs,* 582 F. 3d 1155, 1166 (10th Cir. 2009) (quoting *Shero v. City of Grove*, 510 F. 3d 1196, 1204 (10th Cir.2007)). Where, as in this case,

---

[5]Although Plaintiff refers in her response to her separate pending motion to file a Second Amended Complaint, she does not expressly seek leave in the event the Court finds the Amended Complaint deficient.

qualified immunity is asserted in a motion to dismiss, the correct standard for review is the same as for dismissals based on failure to state a claim for relief. *Archuleta v. Wagner,* 523 F. 3d 1278, 1281 (10th Cir.2008) (citing *Moya v. Schollenbarger*, 465 F. 3d 444, 455 (10th Cir.2006)).

Prior to the Supreme Court's decision in *Pearson v. Callahan*, 555 U. S. __, 129 S. Ct. 808 (2009), the qualified immunity analysis required the Court to first determine whether the complaint alleged conduct which amounted to a constitutional violation and, if so, to then determine whether the right violated was clearly established at the time of the conduct at issue. *Archuleta*, 523 F. 3d at 1283. In *Pearson,* however, the Supreme Court held that the Court is no longer required to first consider the existence of a constitutional violation; instead, it may analyze the two-part test in any order it chooses. *Pearson*, 555 U.S. at __, 129 S.Ct. at 818. Under *Pearson*, the Court is "permitted to address whether the law is clearly established before addressing whether a constitutional violation has occurred." *Nielander*, 582 F. 3d at 1166 (citing *Pearson*, 555 U.S. at __, 129 S.Ct. at 818).

In this case, the general law regarding the use of excessive force and unlawful seizure was certainly well established at the time of the incident at issue. However, as Citty argues, Plaintiff has failed to allege with sufficient particularity the actions or inactions which she contends form the basis for Citty's alleged violation of these established rights. As Citty suggests in his brief, his qualified immunity argument is based at least in part on his assumption regarding Plaintiff's anticipated response and the presumed basis for her attempt to hold him individually liable. *See* Motion and Brief, p. 4, n. 3. Whether Citty is entitled to qualified immunity should not, however, be based on the Court's speculation regarding Plaintiff's theory of relief. Because the Court has authorized Plaintiff to amend to state an individual capacity claim against Citty, it cannot determine the issue of qualified immunity with certainty at this time. If Citty pursues this contention,

however, he may reassert his argument in an appropriate motion directed at the Second Amended Complaint.

b. Official capacity claims:

Plaintiff also asserts claims against Citty in his official capacity as Police Chief. She does not, however, plead facts to show the basis for such claims. Citty argues that, in a § 1983 case in which the governmental entity employing individual actors is also sued, it is unnecessary to sue the individual actors in both their official and individual capacities.

As Citty correctly argues, it is well settled that a § 1983 claim against an employee in his official capacity is, in reality, an action against the government entity which employs him. *Moss v. Kopp,* 559 F. 3d 1155, 1168 n. 13 (10th Cir. 2009) ( citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)); *Biehl v. Salina Police Dept.*, 256 F. App'x 212, 214 (10th Cir. 2007) (unpublished opinion) (citing *Thompson v. City of Lawrence*, 58 F. 3d 1511, 1517 (10th Cir. 1995)); *Graves v. Thomas*, 450 F. 3d 1215, 1218 (10th Cir. 2006). Thus, there is no need to bring an official capacity suit against a government employee based on the implementation or execution of a governmental policy where the employing governmental entity is also named as a defendant. *Pietrowski v. Town of Dibble*, 134 F. 3d 1006, 1009 (10th Cir. 1998). In such cases, it is only the liability of the employing municipality that is at issue. *Brandon v. Holt*, 469 U. S. 464 (1985).

In this case, Plaintiff has sued Oklahoma City, arguing that it is liable, as the employing municipality, for the alleged constitutional violations committed by all defendants named in this case. She contends Citty and the other defendants were carrying out an official policy or custom of the City when they allegedly violated Bills' rights. Alternatively, she alleges Citty had final policy making authority for the City and, as a result, the City can be liable for his conduct. Whether

11

Plaintiff can prove these allegation is not the subject of Citty's motion. Instead, the issue he raises is whether he can be sued in his official capacity when Oklahoma City has also been sued and is alleged to be liable for his conduct as well as that of other defendants.

Plaintiff's response does not offer argument or authority which authorizes a suit against Citty his official capacity where she has also sued Oklahoma City in an attempt to hold it liable. Plaintiff expends considerable argument in an attempt to show that Citty was a policymaker because his role as Police Chief authorized him to make certain decisions and promulgate certain policies within the police department. Proof of those contentions may arguably form the basis for the liability of Oklahoma City; it does not, however, authorize a claim against Citty in his official capacity where Plaintiff seeks to hold Oklahoma City liable because Citty was a policymaker. Instead, final policymaking authority is one potential basis for holding Oklahoma City liable under § 1983 for the allegedly unconstitutional acts. It has long been established that § 1983 municipal liability may not be based on a *respondeat superior* theory. *Board of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). However, a municipality may be liable under § 1983 for the constitutional torts of its employees, including police officers, if the officers' unconstitutional actions "were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Orr v. City of Albuquerque*, 417 F. 3d 1144, 1153-54 (10th Cir. 2005); *Brown*, 520 U.S. at 403-404. In either case, however, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F. 2d 774, 782 (10th Cir. 1993). An action against an official of the municipality for his conduct in implementing policy, or his purported role as a policymaker, is thus a means of holding the municipality liable for that conduct. *Brandon v. Holt*, 469 U. S. 464, 471

12

(1985); *Monnell,* 436 U.S. at 690.

In this case, Oklahoma City has not filed a motion to dismiss the Amended Complaint. Therefore, whether Citty is a policymaker for § 1983 purposes is not an issue raised by his motion. Plaintiff's arguments do not support the propriety of bringing an official capacity claim against an individual whose employing entity is also a defendant in the same case.

Accordingly, Citty's motion to dismiss the official capacity claims asserted against him must be granted. In contrast to the Court's decision regarding the propriety of an amendment to cure the deficiency in the individual capacity claims, leave to amend will not be authorized with regard to the official capacity claims, as it is apparent that an attempt to amend would be futile.

IV. Conclusion:

For the foregoing reasons, Defendant Citty's Motion to Dismiss [Doc. No. 100] is GRANTED. However, Plaintiff is granted leave to amend to assert claims against him in his individual capacity; leave to amend is denied as to the official capacity claims. Because there are pending before the Court other motions to dismiss as well as a separate motion to amend filed by Plaintiff, the Court will include a deadline for the filing of the Second Amended Complaint in a subsequent order.

IT IS SO ORDERED this 10th day of September, 2010.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE